IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBBE B. MILLER,

                Plaintiff,

  v.                                                                                          OPINION and ORDER

WISCONSIN DEPARTMENT OF CORRECTIONS,                  08-cv-62-bbc
DR. KENNETH ADLER, TAMMY MAASEN,
DAVID BURNETT, SHARON
ZUNKER and JAMES GREER,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action for monetary and injunctive relief, plaintiff Robbe B. Miller was granted leave to proceed on three claims: that defendant Dr. Kenneth Adler violated his constitutional rights by denying him a cane and failing to adequately treat his pain and spasms related to problems with his spinal cord, knees and legs; that defendants Tammy Maasen, David Burnett, Sharon Zunker and James Greer violated his constitutional rights by "turning a blind eye" to defendant Adler's failure to treat him; and that defendants Adler and Wisconsin Department of Corrections violated Title II of the Americans with Disabilities Act by denying him a cane. Now before the court is defendants Wisconsin

1

Department of Corrections', Adler's and Zunker's motion for summary judgment, which I will grant. Plaintiff's claims all boil down to whether defendant Adler's treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition and plaintiff has adduced no evidence that would allow a reasonable jury to make such a finding.

Before turning to the facts, I must address two preliminary issues. First, although only defendants Wisconsin Department of Corrections, Adler and Zunker have filed a motion for summary judgment, they are not the only defendants remaining in this case, despite defendants' mistaken belief to the contrary. Dft.'s Reply Br., dkt. #93, at 1 n.1 ("Adler and Zunker are the only remaining defendants at this stage of the proceedings."). Plaintiff was granted leave to proceed on his claims against defendants Maasen, Burnett and Greer as well, dkt. #17, and his claims against them have not been dismissed for any reason. It is not clear why defendants have come to believe that the other defendants are no longer a part of this lawsuit. Perhaps defendants prepared their motion for summary judgment after looking only at the court's first order granting leave to proceed, in which the court granted plaintiff leave to proceed against only defendants Wisconsin Department of Corrections, Adler and Zunker and stayed a decision as to the other defendants. Dkt. #14.

In this case, however, defendants' mistake is harmless. Although defendants Maasen, Burnett and Greer have not moved for summary judgment, plaintiff cannot prevail on his

2

claims against them because they depend on his claims against defendant Adler. Because plaintiff has failed to adduce evidence that defendant Adler acted with deliberate indifference when he declined to provide him certain medication and took away his cane, he cannot establish that these other defendants violated his constitutional rights by "turning a blind eye" to defendant Adler's alleged deliberate indifference. Therefore, summary judgment will be granted to these defendants on the court's own motion.

Next, although plaintiff was given instructions on how to respond properly to motions for summary judgment, he has failed to follow them. He was required to cite to evidence in the record to support any response to defendant's proposed findings of fact and any additional finding of fact plaintiff proposes. Procedure to Be Followed on Motions for Summary Judgment, I.B.2. and II.D.2, and Memorandum to Pro Se Litigants Regarding Summary Judgment Motions in Cases Assigned to Judge Crabb, attached to Preliminary Pretrial Conference Order (July 15, 2008), dkt. #30. However, none of plaintiff's responses to defendant's proposed findings of fact or his own proposed findings of fact are supported by evidence. (A few of his proposed findings of fact mention certain irrelevant documents attached to his proposed findings of fact, but none of those documents are admissible.) Therefore, pursuant to this court's rules, plaintiff's proposed findings of fact must be disregarded and defendant's proposed findings of fact taken as undisputed.

Although plaintiff may believe it is unfair to disregard his proposed findings of fact

3

and responses, they cannot be considered because they have no grounding in evidence. I note that, even if plaintiff's proposed findings of fact had been considered, they could not have created a material dispute of fact. Plaintiff does not disagree that defendant Adler gave him the treatment Adler says he did; he simply disagrees that that treatment was the best course of treatment for him. As I explain below, that is not enough

From the parties' proposed findings of fact and the record, I find that the following facts are material and undisputed.

## UNDISPUTED FACTS

Plaintiff Robbe B. Miller was an inmate at the Jackson Correctional Institution from August 28, 2007 until May 20, 2008, when he was transferred to the Dodge Correctional Institution.

Defendant Kenneth Adler is a licensed physician employed by defendant Wisconsin Department of Corrections. He works as a physician at the Jackson Correctional Institution, where he attends to the medical needs of inmates, diagnoses and treats illness and injuries and arranges for professional consultation when necessary. He also helps supervise others in developing and implementing treatment protocols and patient flow charts. He supervised plaintiff's medical care during the time plaintiff was at the Jackson Correctional Institution.

Defendant Adler first saw plaintiff in an initial assessment on September 21, 2007.

4

Plaintiff asked for a surgical evaluation for a left breast lump, stated that he was having neck spasms that lasted for a fraction of a second two to three times a day, stated that he had right knee problems for about a month, and stated that he had low back pain radiating to his right leg.  During defendant Adler's exam, plaintiff was able to sit up with his legs stretched straight in front of him and his waist bent at a 90 degree angle, but when Adler asked plaintiff to lie down and Adler raised plaintiff's straight legs, plaintiff said he was in pain when his waist was bent at a 45 degree angle. When defendant Adler asked plaintiff to take his shoes off, he was able to touch his left knee to his chest.  However, when defendant Adler had plaintiff lie down and defendant Adler raised plaintiff's bent knee 45 degrees, plaintiff said he was in significant pain.  Plaintiff was also able to sit up with his right knee flexed at a 90 degree angle, but when defendant Adler bent his right knee at a 45 degree angle, plaintiff said he was in pain.  As a result of the tests, defendant Adler determined that plaintiff exhibited inconsistent knee and back pain behavior during this visit.  When defendant Adler asked plaintiff to perform a particular task plaintiff appeared able to do so without pain, but when he examined plaintiff specifically for pain symptoms, plaintiff would complain of significant pain associated with the same kind of body movements.

Defendant Adler ordered a evaluation to determine whether surgery would be proper for plaintiff's reported breast lump.  However, because of plaintiff's inconsistent behavior during the examination concerning his complaints of pain, defendant Adler discontinued

5

plaintiff's prescriptions for baclofen, a muscle relaxant, and methadone, a narcotic, and instead ordered acetaminophen for plaintiff.  Defendant Adler discontinued the baclofen because it is approved only for use with spasticity associated with multiple sclerosis or spinal cord lesions or for intractable severe pain, and discontinued the methadone prescription because it is approved only for pain that is severe.  According to defendant Adler, plaintiff's pain at that time did not appear to fit the criteria for those medications.  At this first visit, Defendant Adler also evaluated plaintiff's need for the cane he was using.  Defendant Adler watched plaintiff walking in the hallway and observed his gait to be within normal limits.  Plaintiff was not using the cane for support at the time.  Therefore, defendant Adler did not believe that there was a medical reason for Miller to have the cane and removed plaintiff's medical restriction for the cane.

     Defendant Adler's next office visit with plaintiff was on October 22, 2007.  Plaintiff said that his right knee continued to bother him and that he needed his medications, in particular, narcotic pain medication. Defendant Adler's observed that plaintiff could actively flex his right knee 110 degrees when he was putting on his shoes, but when Defendant Adler flexed plaintiff's knee 90 degrees as part of a formal exam, he said he was in bad pain.  On further examination, plaintiff exhibited a tender "IT band" (the outer side of the knee). Plaintiff was persistent with his requests for narcotics but defendant Adler was not willing to prescribe them because he again found that plaintiff's subjective reports about pain were

6

inconsistent with defendant Adler's observations. Defendant Adler encouraged plaintiff to use analgesic balm and also ordered an x-ray of the right knee.

At the time plaintiff was under defendant Adler's care, he carried the diagnosis of having the Hepatitis C virus in his blood, but there was no laboratory evidence that he had liver damage related to the virus. Use of acetaminophen in patients with Hepatitis C who have no signs of liver damage is considered safe so long as liver functions are monitored. While plaintiff was under defendant Adler's care, blood tests were ordered to check his liver function and it remained normal. Plaintiff was reassured that his liver tests were normal and that he could safely use acetaminophen as defendant Adler had prescribed it to him.

In an office visit on December 18, 2007, plaintiff complained of right knee pain and said it had been worse for the past couple of months. He said there was grinding, swelling and popping in his knee and that he had trouble walking and using the stairs. Defendant Adler observed that plaintiff could flex his right knee 100 degrees and left knee 110 degrees when taking off his shoes and socks and that his gait was within normal limits. In addition, defendant Adler heard a mild click in plaintiff's knee, about which plaintiff made "dramatic pain complaints." Plaintiff said the pain was on the medial (inner) side of the knee, which was a change from the exam findings of October 22, 2007. The results of the x-ray of his knee obtained on October 29, 2007 showed mild arthritis of the knee. Defendant Adler attempted a steroid injection in plaintiff's right knee, but was unable to enter the joint space.

7

In addition, he prescribed glucosamine chondroitin sulfate to treat plaintiff's arthritis and scheduled a followup visit with him in one month.

In an office visit on January 15, 2008, plaintiff stated that he had injured his lower back three weeks ago while bending over, that pain radiated below his knee but not to the foot, that the pain in his leg was constant, that the pain was worse going to bed, walking and standing, and that nothing made it better. Defendant Adler observed that plaintiff was able to externally rotate his right hip 90 degrees while taking off his shoes on his own without evidence of pain but complained of pain when Adler externally rotated the same hip only 20 degrees. His left Achilles reflex was sluggish on the left side compared to his right side, but his sensory examination was normal. Defendant Adler's assessment at this visit was that plaintiff had ongoing low back pain syndrome and was concerned that he might have a pinched nerve in his low back. Plaintiff had concerns at this visit about his asthma. Defendant Adler added nortriptyline to plaintiff's pain medication regimen, ordered a short course of prednisone to treat his asthma as well as empiric therapy for his possible pinched nerve, ordered advair for plaintiff's asthma and scheduled a follow-up visit in one month.

OPINION

Plaintiff's primary claim is that defendant Adler was deliberately indifferent to his serious medical needs. His other two claims depend on that claim. His second claim is that

8

other defendants turned a "blind eye" to defendant Adler's deliberate indifference and his third claim is that defendant Adler's decision to deny him a cane violated the ADA. Although this latter claim would not appear to require that defendant Adler have been deliberately indifferent to plaintiff's medical needs, the only entity that may be held liable for an ADA violation is a "public entity," which in this case is defendant Wisconsin Department of Corrections. Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (Title II of ADA applies only to "public entities" as stated in 42 U.S.C. § 12131, which precludes personal liability to employees of that entity). At the same time, defendant Wisconsin Department of Corrections is a state agency and, as the Supreme Court has held, suits against state agencies require conduct that "actually violated" the Fourteenth Amendment. United States v. Georgia, 546 U.S. 151 (2006). In this case, the only conduct related to plaintiff's ADA claim that could be said to "actually violate" the Fourteenth Amendment is defendant Adler's alleged deliberate indifference, which has been incorporated into the Fourteenth Amendment from the Eighth Amendment.

Therefore, I consider first whether defendant Adler's treatment of plaintiff could be considered "deliberate indifference." To show deliberate indifference, a plaintiff must establish that the defendants were "subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001). When a prisoner receives some form of

9

medical care, he must show that the care he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's serious medical condition. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996). Mere disagreement with a doctor's medical judgment, inadvertent error, negligence, malpractice or even gross negligence in providing treatment is insufficient to establish deliberate indifference. Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007); Washington v. LaPorte County Sheriff's Dept., 306 F.3d 515, 518 (7th Cir. 2002).

In this case, plaintiff has failed to adduce evidence that defendant Adler was deliberately indifferent to his serious medical needs when he refused to provide him opiates or muscle relaxers and took his cane away. Deliberate indifference requires that a prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually "draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). In this case, defendant Adler may have been "aware of facts from which the inference could be drawn" that plaintiff was in serious pain, but he did not actually "draw the inference" because he decided that plaintiff's reports of pain were not consistent with his behavior. In other words, defendant Adler simply did not believe plaintiff.

In some circumstances a doctor may be found to be deliberately indifferent even if he disbelieves a plaintiff's account of his pain. Hayes v. Snyder, 546 F.3d 516, 524-25 (7th Cir. 2008) (doctor's position that no pain experienced by any prisoner ever warrants

10

prescription-strength painkillers allows an inference to be drawn that he would not have prescribed them even when they really were necessary). However, unless a doctor's decision not to believe a plaintiff's report of pain was "so far afield of accepted professional standards as to raise the inference that it was not based on a medical judgment," it cannot raise an inference of deliberate indifference, even if the doctor is mistaken. Duckworth v. Ahmad, 532 F.3d 675, 680 (7th Cir. 2008) (although later tests confirmed prisoner's fears that he had cancer, neither doctor's mistaken belief that prisoner was seeing specialist nor his decision to forgo more aggressive treatment plan "raise an inference of deliberate indifference"). Plaintiff adduces no evidence that defendant Adler's refusal to believe plaintiff's reports of pain was not based on a medical judgment.

As I noted above, even if plaintiff's proposed findings of fact could be considered, they would not allow an inference that defendant Adler's decision was not based on a medical judgment. Plaintiff needed an expert to testify that defendant Adler's conclusions about what he observed in his observations of plaintiff were "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." Plaintiff's own say-so about whether it was proper for defendant Adler to draw that conclusion is not enough. The 45 exhibits plaintiff attached to his response to defendants' proposed findings of fact do not help him. They are all documents regarding either his medical history, complaints he made to prison officials and general descriptions

11

and definitions related to his medical conditions. Thus, even if these documents were admissible, none of them would allow an inference that defendant Adler was not medically entitled to conclude that plaintiff was lying about his pain and his need for a cane.

Because plaintiff has failed to adduce facts that would allow a reasonable jury to find that defendant Adler was deliberately indifferent to his serious medical needs and because defendant Adler's alleged indifference lies at the heart of the claims against the other defendants, plaintiff cannot prevail on any of his claims. Therefore, defendants' motion will be granted.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Wisconsin Department of Corrections, Sharon Zunker and Kenneth Adler, dkt. #78, is GRANTED.

2. On the court's own motion, summary judgment is GRANTED to defendants Tammy Maasen, David Burnett and James Greer on plaintiff's claims against them.

3. The clerk of court is directed to enter judgment in defendants' favor and close this

case.

    Entered this 13th day of March, 2009.

                              BY THE COURT:

                              /s/

                              _____
                              BARBARA B. CRABB
                              District Judge